UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| John D. Lieberman, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )  Docket no. 1:12-cv-95-GZS |
| | ) |
| Brian MacMaster, et al., | ) |
| | ) |
|       Defendants. | ) |
| | ) |
| | ) |

**ORDER ON MOTION TO DISMISS
AND MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the Motion To Dismiss Or, In The Alternative, For Summary Judgment And Incorporated Memorandum of Law (ECF No. 26) by Defendant Eric Holder ("Def.'s Mot."), Plaintiff's Memorandum In Opposition To Defendant Holder's Motion To Dismiss And Plaintiff's Cross Motion For Summary Judgment With Incorporated Memorandum Of Law (ECF No. 30) ("Pl.'s Opp'n") and Plaintiff's Second Motion To Amend (ECF No. 48). On August 1, 2013, the Court held oral argument on Defendant's Motion and Plaintiff's Opposition. Prior to oral argument, the Court alerted both sides regarding its concerns surrounding subject matter jurisdiction and standing and invited supplemental briefing on those issues. (See ECF No. 43.) Having fully considered the parties' written and oral submissions, the Court finds that it does not have jurisdiction to consider Plaintiff's claim and that Plaintiff's Motion To Amend is futile. Accordingly, the Court DISMISSES this case.

## I.     BACKGROUND

### A.     The Assault And The Arraignment

In the fall of 1994, Plaintiff John Lieberman was involved in an assault on his then-wife. (Am. Compl. (ECF No. 10) ¶ 8; Somerset Cnty. Sheriff's Dep't Report & Summons (ECF No. 26-1).)  On November 30, 1994, he was arraigned on the assault charge at the Skowhegan District Court in a mass arraignment before Judge Douglas Clapp.  (Am. Compl. ¶ 9; Aff. Of John D. Lieberman (ECF No. 31-1) ("Lieberman Aff.") ¶ 10.)  At the arraignment, Lieberman was not represented by counsel and alleges that he was not advised of his right to counsel or his right to request a jury trial.  (Am. Compl. ¶ 9.)

Under Maine Rule of Criminal Procedure 22, Lieberman had to request a jury trial within 21 days of arraignment, or his right to a jury trial would be deemed waived.  See Me. R. Crim. P. 22.  Lieberman claims that he did not voluntarily waive his right to a jury trial on the assault charge because he was never informed of his right and was unaware that he had the right to have the case tried by a jury.  (Am. Compl. ¶ 18.)  Specifically, Lieberman asserts that at the mass arraignment on November 30, he was never advised of his right to a jury trial.  (Lieberman Aff. ¶¶ 8-14, 21.)  On March 20, 1995, Lieberman pled guilty, with counsel,[1] to the assault charge. (Id.)

### B.     The Maine Criminal Justice Academy And Subsequent Employment

In 2011, Lieberman graduated from the Maine Criminal Justice Academy ("MCJA") and received his certification from the MCJA to act as a reserve police officer in the State of Maine.[2]

---

[1] At the arraignment, Lieberman's case was set for trial on January 30, 1995.  The trial was continued to March 20, 1995 because he had not yet retained an attorney as of late January.  (Am. Compl. ¶¶ 9-10.)  Lieberman did not retain counsel until January 31, 1995, after the 21 day deadline for requesting a jury trial had passed.  (Id. ¶ 12.)

[2] The MCJA and its Board of Trustees provide certification for persons to act as law enforcement officers in Maine. (Am. Compl. ¶ 2.)

2

(Am. Compl. ¶¶ 1, 15.)  After completing the MCJA, Lieberman was hired by the Town of Dexter Police Department to act as a reserve officer.  (Id. ¶ 15.)

Later in 2011, Lieberman was informed that an anonymous caller had contacted the Town of Dexter, suggesting that Lieberman was not permitted to possess a firearm and should not be a police officer.  (Id. ¶ 16.)  As a result of this call, "an investigation was conducted and the MCJA determined that Lieberman's 1995 conviction disqualified Lieberman from possessing a firearm under federal law because that conviction was considered by the MCJA to be a 'misdemeanor crime of domestic violence' under 18 U.S.C. § 922(g)(9)."  (Id.)  The MCJA told Lieberman that he could not act in a law enforcement capacity in Maine other than to perform administrative duties.  (Id. ¶ 19.)  According to Lieberman's Amended Complaint, "[t]he basis of [that] restriction was the inaccurate determination by the MCJA that Lieberman's conviction prohibited him from possessing a firearm."  (Id.)

To support his claim for relief, Lieberman also indicates that he "has the present intention of purchasing and/or possessing firearms for use for self-defense in his own home, including a long rifle and a handgun."  (Am. Compl. ¶ 21.)

## II. PROCEDURAL POSTURE

On March 20, 2012, Lieberman brought suit against Brian MacMaster, Chair of the Board of Trustees of the MCJA and John Morris, Commissioner of the State of Maine Department of Public Safety.  (Compl. (ECF No. 1).)  Lieberman amended his complaint on August 23, 2012 to add Eric Holder, Attorney General of the United States, as a defendant.  In his Amended Complaint, Lieberman alleged that "Mr. MacMaster and the MCJA are presently enforcing the restriction on Lieberman's ability to act fully as a law enforcement officer in Maine."  (Am. Compl. ¶ 2.)  Lieberman further alleges that as Attorney General, "Mr. Holder is

3

presently enforcing unconstitutional laws, customs, practices and policies complained of [in the Amended Complaint]." (Id. ¶ 4.)

In his Amended Complaint, Lieberman asserted three causes of action: (1) Lieberman requested a declaratory judgment that "he is not prohibited from possessing a firearm by operation of federal law because his prior conviction for assault was not a misdemeanor crime of domestic violence as that term is defined in 18 U.S.C. § 922(g)(9) and § 921(a)(33)." (Am. Compl. ¶ 24.) (2) Lieberman asserted a cause of action under 42 U.S.C. § 1983 that he is entitled to possess a firearm pursuant to the Second Amendment of the United States Constitution and that the restriction on his possession of a firearm violates his right to equal protection of the laws under the Fourteenth Amendment. (Id. ¶¶ 25-26.) (3) Lieberman asserted a cause of action under 42 U.S.C. § 1983 that the restriction on his ability to possess a firearm violated his rights under the Second Amendment. (Id. ¶¶ 27-28.)

On February 15, 2013, Defendant Holder moved to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) on all three counts, and alternatively moved for summary judgment as to the first count. (See Def.'s Mot. at 1.) In his Opposition, Lieberman did not contest the dismissal of the second and third counts of the Amended Complaint. (Pl.'s Opp'n at 2.) Accordingly, the Court considers Counts II and III of the Amended Complaint dismissed without objection. On March 28, 2013, Lieberman stipulated to the dismissal without prejudice of Brian MacMaster and John Morris. (Stipulation Of Dismissal (ECF No. 33).) Therefore, Defendant Holder is the only Defendant in this action, and Count I seeking a declaratory judgment is the sole count before the Court.

On July 2, 2013, the Court issued a Notice Of Hearing and a Procedural Order indicating that the Court would hold oral argument on August 1, 2013. (See ECF Nos. 43 & 44.) The

4

Court requested that the parties be prepared to discuss the issues of whether the Court has subject matter jurisdiction over Count I and whether Lieberman has standing to pursue that claim against Defendant Holder. The Court held oral argument on August 1, 2013. At oral argument, Lieberman indicated that he would like leave to amend his Amended Complaint to reflect an additional basis for the Court's subject matter jurisdiction. Plaintiff's Motion To Amend was filed on August 13, 2013, nearly two weeks after oral argument. The Court now turns to the issues presented by this case.

## III.   DISCUSSION

### A.   Subject Matter Jurisdiction

Lieberman's sole remaining claim requests a declaratory judgment "that he is not prohibited from possessing a firearm by operation of federal law because his prior conviction for assault was not a misdemeanor crime of domestic violence as that term is defined in 18 U.S.C. § 922(g)(9) and § 921(a)(33)." (Am. Compl. ¶ 24.) Before the Court can consider the merits of Lieberman's claim, the Court must have subject matter jurisdiction over that claim. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); see also Florio v. Olson, 129 F.3d 678, 680 (1st Cir. 1997) (providing that a court has "an obligation to inquire *sua sponte* into the subject matter jurisdiction of its cases, and to proceed no further if such jurisdiction is lacking" (internal citations and quotations omitted).) Lieberman asserts that the Court has subject matter jurisdiction over his case pursuant to 28 U.S.C. §§ 2201, 2202 as well as 28 U.S.C. § 1331.[3]

---

[3] In the Amended Complaint, Lieberman also supplies 28 U.S.C. § 1343 and 42 U.S.C. § 1983 as additional grounds for the Court's subject matter jurisdiction. 28 U.S.C. § 1343 does not apply because this case is not an action for damages or "to redress the deprivation, under color of any State law . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." Id. Next, 42 U.S.C. § 1983 does not provide a cause of action against federal officers acting in their official capacities nor does it waive federal immunity. See McCloskey v. Mueller, 446 F.3d 262, 271 (1st Cir. 2006) (providing that "a section 1983 claim ordinarily will not

5

The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, does not provide the Court with subject matter jurisdiction. The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act does not create an independent basis for subject matter jurisdiction for federal courts; it provides a remedy for disputes that have federal jurisdiction. Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California, 463 U.S. 1, 17 (1983), superseded by statute as stated in Dep't of Revenue of State of Iowa v. Inv. Finance Mgmt. Co., Inc., 831 F.2d 790 (8th Cir. 1987) (stating that "the Declaratory Judgment Act was intended to affect only the remedies available in a federal district court, not the court's jurisdiction"). Thus, a federal court must have an independent basis for federal jurisdiction that empowers it to issue a declaratory judgment. Because the Declaratory Judgment Act does not provide a valid cause of action or a basis for subject matter jurisdiction, the Court must look outside of the Declaratory Judgment Act to determine whether it has subject matter jurisdiction.[4] See id.

At oral argument and in Plaintiff's Motion To Amend, Lieberman stated that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and that the Amended Complaint should be amended to reflect that basis for jurisdiction. The Court finds that even if the

---

lie against a federal actor"). Lieberman did not pursue these grounds for subject matter jurisdiction at oral argument. In his Motion To Amend, Lieberman suggested that the Court would have jurisdiction under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). However, Bivens permits "a suit for damages against federal officers in their individual capacities for alleged violations of the plaintiff's constitutional rights." Tapia-Tapia v. Potter, 322 F.3d 742, 746 (1st Cir. 2003) ("Bivens suits only can be brought against federal officers in their individual capacities.") Here, Lieberman asserts a claim against Defendant Holder in his official capacity, and, therefore, Bivens is inapplicable.

[4] Similarly, the Gun Control Act does not present a valid cause of action nor a basis for subject matter jurisdiction. Woods v. City & County of Denver, 62 Fed. App'x 286, 289 (10th Cir. 2003) (stating that § 922 is not a jurisdictional statute and does not provide a cause of action).

Amended Complaint were amended to reflect an assertion that the Court has jurisdiction under § 1331, the Court would reach the same result: that it lacks subject matter jurisdiction over Lieberman's sole claim.

Section 1331 gives federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Arising under" has been narrowly interpreted, and federal question jurisdiction will not lie where the federal law comes into question only as a defense to an action. See Franchise Tax Bd. of State of Cal., 463 U.S. at 10 (stating that "a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise."). To determine whether an action for a declaratory judgment arises under federal law, courts look at the well-pleaded complaint and determine whether there would be federal jurisdiction in a suit for coercive relief by either party, separate from any anticipated or asserted defenses. See id.; see also Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 248 (1952) ("Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.").

In Woods v. City & County of Denver, Plaintiff Alex Woods, a former police officer for the City and County of Denver, Colorado, was convicted by a jury of third-degree assault against his girlfriend, a misdemeanor under Colorado law. 62 Fed. App'x at 287. The Civil Service Commission determined that the assault, as a misdemeanor crime of domestic violence, disqualified him from further employment with the police department. Id. at 287-88. Woods then brought suit in federal court. His first cause of action against the City and County of

Denver, the Commission, the United States, and the Bureau of Alcohol, Tobacco and Firearms ("ATF") sought a declaratory judgment that his assault conviction was not a misdemeanor crime of domestic violence. Id. at 288. The district court issued a declaratory judgment finding that the assault was not a misdemeanor crime of domestic violence and that the court had jurisdiction because "to the extent Woods seeks construction of the statutory language itself, the court clearly had jurisdiction pursuant to 28 U.S.C. § 1331." Id. (internal punctuation omitted). The Tenth Circuit disagreed on the grounds that "section 921(a)(33)(A)(ii) is not a jurisdictional statute, nor does it create a federal cause of action." Id. at 289. (internal punctuation omitted). Further, the court held that "construction of a federal statute, standing alone, is not a 'cause of action,' nor does it confer federal question jurisdiction." Id. Therefore, the district court lacked subject matter jurisdiction to construe the phrase "misdemeanor crime of domestic violence." Id. at 290.

      Applying the well-pleaded complaint rule here, Lieberman's claim is essentially an employment-related claim sounding in wrongful termination or perhaps breach of contract. A suit for coercive relief by Lieberman would seek to establish that the change in his certification and diminished employment responsibilities were wrongful actions. Whatever particular legal theory Lieberman chose to pursue, the MCJA, who is no longer a party to this suit, would be the proper defendant. Aside from his employment and certification dispute, Lieberman has not alleged any other basis on which he could assert a claim for coercive relief. As in Woods, here the Court is left with only a request to interpret the requirements for a misdemeanor crime of domestic violence in the form of a declaratory judgment. See Woods, 62 Fed. App'x at 289. While the resolution of Lieberman's potential claim might involve construction of a federal statute, "[t]he mere fact that a court necessarily must interpret federal law or federal regulations to determine the merits of a claim is insufficient to confer federal jurisdiction." J.A. Jones Const.

8

Co. & Daidone Elec. of N.Y., Inc., a Joint Venture v. City of New York, 753 F. Supp. 497, 501 (S.D.N.Y. 1990) (citing Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 813 (1986)); see also Gully v. First Nat'l Bank, 299 U.S. 109, 115 (1936) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit."). Here, the Court finds that the declaratory judgment pursued by Lieberman does not "arise under" federal law. Instead, the Court is left with only a request for declaratory judgment, which is insufficient to convey federal jurisdiction. See Woods, 62 F. App'x at 290.

Because the Court lacks subject matter jurisdiction over Lieberman's sole remaining claim against Defendant Holder, this case must be DISMISSED. Concluding that Lieberman's belated Motion To Amend is similarly deficient, the Court finds that Lieberman's Motion To Amend is futile and therefore DENIED.[5] However, even if the Court had found that it had jurisdiction, it would nonetheless dismiss this case because Lieberman lacks standing to sue Defendant Holder for a declaratory judgment.

**B.    Standing**

Standing is a threshold issue in every federal case. See Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006) (stating that "[a] federal court must satisfy itself as to its jurisdiction, including a plaintiff's Article III standing to sue, before addressing his particular claims, regardless of whether the litigants have raised the issue of standing."). If a plaintiff lacks standing, then a

---

[5] Federal Rule of Civil Procedure 15(a) requires that leave to amend pleadings be "freely given when justice so requires." Fed. R. Civ. P. 15(a). "While granting leave is a matter of the trial court's informed discretion," Swan v. Sohio Oil Co., 766 F. Supp. 18, 20 (D. Me. 1991) (internal citation omitted), "the ordinary practice is to grant leave to amend pleadings unless there is a compelling reason to the contrary." Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962) (listing specific grounds upon which a court might refuse to grant leave to amend)). Indeed, "Rule 15(a) reflects a liberal amendment policy," and the district court therefore "enjoys significant latitude in deciding whether to grant leave to amend." U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (internal citation omitted). Nonetheless, even a timely motion for leave to amend is properly denied when the proposed amendments would be futile. See Foman, 371 U.S. at 182; Chiang v. Skeirik, 582 F.3d 238, 243-44 (1st Cir. 2009). Where an amended complaint could not withstand a motion to dismiss, "then the motion to amend should be denied as futile." Shannon v. Houlton Band of Maliseet Indians, 54 F. Supp. 2d 35, 38 (D. Me. 1999) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

court lacks jurisdiction to decide a case. To satisfy Article III's standing requirements, "Plaintiffs must show (1) that they have suffered an injury in fact, (2) that the injury is fairly traceable to the defendant's allegedly unlawful actions, and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Animal Welfare Inst. v. Martin, 623 F.3d 19, 25 (1st Cir. 2010) (internal quotations omitted).

To satisfy the injury in fact requirement, Plaintiff must show that Defendant has invaded "a legally protected interest that is 'concrete and particularized.'" Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 156 (4th Cir. 2000) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Here, Lieberman presents two possible injuries. First, in the Amended Complaint, Lieberman asserts that he "has the present intention of purchasing and/or possessing firearms for use for self-defense in his own home, including a long rifle and a handgun" (Am. Compl. ¶ 21) but that he is "fearful of exercising his lawful rights as a United States citizen to possess a firearm" (Pl.'s Mem. Of Law Regarding Standing (ECF No. 45) at 3.) because of the potential for prosecution. Second, Lieberman asserts that in the fall of 2011, he "was instructed by the MCJA that he could no longer act as a law enforcement officer in Maine in any capacity other than performing administrative duties," and that he was therefore "prohibited from performing all of the duties of a law enforcement officer in Maine" and that his police officer certification was restricted. (Id. ¶ 19.)

First, the Court finds that Lieberman's "present intention of purchasing or possessing" a firearm and the fear of prosecution is not a sufficient injury in fact. In Babbitt v. United Farm Workers National Union, the Supreme Court stated that "one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." 442 U.S. 289, 298 (1979) (internal citations and quotations

omitted). However, "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." Id. (internal citations and quotations omitted). In Crooker v. Magaw, the District of Massachusetts found that a convicted felon, who was prohibited from possessing firearms and ammunition under § 922, lacked standing to pursue his claim for declaratory judgment against ATF that certain gun cartridges and homemade ammunition qualified as "ammunition" under the Gun Control Act. 41 F. Supp. 2d 87, 92 (D. Mass. 1999). Plaintiff asserted that he had standing because he had been prosecuted in the past for cases involving firearms, he would "without a doubt" face prosecution "if he ma[de] a mistake about what he [could] lawfully possess." Id. at 91. The court, however, found plaintiff's fear of prosecution insufficient to confer standing.

> [P]laintiff's fear that he may face prosecution if he possesses certain obsolete or homemade cartridges is simply too speculative to confer standing. Although plaintiff may be unsure as to whether he may lawfully possess particular obsolete or homemade cartridges, he faces no credible threat of prosecution at this time. Prosecution is not "certainly impending."

Id. (citing Babbit, 442 U.S. at 298).

In Crooker, the court acknowledged that its decision placed plaintiff in an awkward position of not knowing whether contemplated conduct might break the law. Nonetheless, the court stated that "declaratory judgment actions cannot be used to obtain answers to hypothetical questions." Id. at 92. The court found standing lacking because "the plaintiff merely expresse[d] a desire to take some action in the future and wishe[d] to know whether he [would] be breaking the law." Id.; see also National Rifle Association of America v. Magaw, 132 F.2d 272, 293 (6th Cir. 1997) (finding that individual plaintiffs lacked standing because their mere "desire" and "wish" to engage in possibly prohibited activities, possessing certain firearms, was insufficient to confer standing).

11

Similarly, in Kegler v. U.S. Dep't of Justice, plaintiff Christopher Kegler successfully petitioned to have his record for simple assault and battery, a misdemeanor crime of domestic violence under § 922(g), expunged under state law. 436 F. Supp. 2d 1204, 1206 (D. Wyo. 2006). He then filed suit against the United States Department of Justice and ATF seeking a declaratory judgment regarding the impact of his granted petition on his ability to possess a firearm. Id. at 1207. In considering whether Kegler had an injury in fact, the court found no credible threat of prosecution where Kegler sought to obtain a firearm at some imprecise point in the future, but feared that he would risk prosecution from doing so. Id. at 1218. The court noted that he had not attempted to purchase a firearm, had not had a firearm confiscated, and had had no contact from the defendants, let alone a threat of investigation, arrest or prosecution from those defendants. Id. The court concluded that Kegler had not suffered an injury in fact and that the mere existence of the statute as "an objectively justified fear of real consequences" insufficient to confer standing. Id. (internal citations and quotations omitted).

Here, the Court finds that Lieberman's first asserted injury, an intention to purchase a firearm and a fear that the purchase may be blocked, is too speculative to qualify as an injury in fact. As in Crooker and Kegler, Lieberman is not under any impending threat of prosecution or investigation. He has not attempted to purchase a firearm and been denied.[6] He has had no

---

[6] The mere intent to purchase a firearm differentiates Lieberman's case from those cited in Plaintiff's Memorandum Of Law Regarding Standing (ECF No. 45). In Schrader v. Holder, the court found that the plaintiff had standing where in the year prior to filing suit, the plaintiff had attempted to purchase a firearm and been rejected because a past conviction had deemed him ineligible as reported in the National Instant Criminal Background System ("NICS"). 831 F. Supp. 2d 304, 308-09 (D.D.C. 2011). Further, the plaintiff in Schrader sued under 18 U.S.C. § 925(a) in an attempt to remove his disability from the NICS. Id. at 307. Similarly, in Kachalsky v. Cacace, a group of plaintiffs challenged New York's concealed weapons licensing scheme as unconstitutional. 817 F. Supp. 2d 235, 239 (S.D.N.Y. 2011). Each of the plaintiffs in that case had applied for and been denied a concealed weapons license. Id. at 244-45. The court found that because plaintiffs had submitted to the challenged policy, they had standing. Id. at 248-49; see also Young v. Hawaii, 911 F. Supp. 2d 972, 987 (D. Haw. 2012) (finding standing where plaintiff challenged that Hawaii's Firearm Carrying Laws violated his Second Amendment rights after plaintiff was denied a license to carry a firearm); Dearth v. Holder, 641 F.3d 499, 502 (D.D.C. 2010) (finding standing to challenge the constitutionality of § 922 where plaintiff had "twice attempted to go through the 'formal

contact with Defendant Holder. Instead, with regard to his first claimed injury, he seeks an answer to a hypothetical question: if, at some point, he should choose to attempt to purchase a firearm, whether that purchase would violate § 922. This Court is not empowered to provide an answer to such a speculative question. Accordingly, the Court finds that his intent to purchase a firearm is not a sufficient injury in fact.

Lieberman's second claimed injury, the reduction in his responsibilities in his employment as a result of the MCJA's determination that he is a prohibited person, presents a different inquiry. The claim of diminished employment responsibilities satisfies the requirement that Lieberman have suffered an actual injury that is neither abstract nor speculative. See, e.g., Stehney v. Perry, 101 F.3d 925, 930 (3d Cir. 1996) (finding that a loss of employment was a sufficient injury for purposes of Article III standing). While Lieberman's employment-related injury is a sufficient "injury in fact," the Court finds that it fails the second requirement, causation. The second prong of the standing inquiry considers whether "the injury is fairly traceable to the defendant's allegedly unlawful actions." Martin, 623 F.3d at 25 (internal punctuation omitted). The purpose of the second prong is to ensure that there is a "genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct" and that plaintiff's injury is not caused by a third party, not presently before the Court. Gaston Copper Recycling Corp., 204 F.3d at 161; see also Lujan, 504 U.S. at 560.

Defendant Holder, in his capacity as the Attorney General, has not taken or threatened any action against Lieberman. Instead, Lieberman's reduction in his employment responsibilities and the alteration in his certification is the result of the actions of the MCJA, which is no longer a party to this lawsuit. Lieberman states in his Amended Complaint that "an

---

process' of applying to purchase a firearm and each time failed because of the laws and regulations he now challenges.").

investigation was conducted and <u>the MCJA determined</u> that Lieberman's 1995 conviction disqualified Lieberman from possessing a firearm under federal law because that conviction was <u>considered by the MCJA</u> to be a 'misdemeanor crime of domestic violence' under 18 U.S.C. § 922(g)(9)." (Am. Compl. ¶ 16 (emphasis added).) Lieberman then goes on to assert that he "was <u>instructed by the MCJA</u> that he could no longer act as a law enforcement officer in Maine" and that "[t]he basis of this restriction was the inaccurate <u>determination by the MCJA</u> that Lieberman's conviction prohibited him from possessing a firearm." (<u>Id.</u> ¶ 19 (emphasis added).) Here, it is the independent action of a third party – the MCJA – that caused Lieberman's asserted injury. Lieberman has failed to connect his asserted injury to any action of Defendant Holder. Therefore, the Court finds that Lieberman's employment-related injury is not fairly traceable to any action of Defendant Holder.

Further, this is not a case where Lieberman is challenging the constitutionality of § 922(g) and the United States or the Attorney General would be a proper defendant. As the First Circuit has stated, "when a plaintiff seeks a declaration that a particular statute is unconstitutional, the proper defendants are the government officials charged with administering and enforcing it." <u>New Hampshire Right to Life PAC v. Gardner</u>, 99 F.3d 8, 13 (1st Cir. 1996). Lieberman's quest for a declaratory judgment that § 922(g)(9) does not apply to him, without challenging the constitutionality of the statute, distinguishes his case from cases brought by similarly situated plaintiffs whose employment were negatively affected by the passage of § 922 and named the United States as defendant. <u>See</u> <u>Nat'l Ass'n of Gov't Employees, Inc. v. Barrett</u>, 968 F. Supp. 1564, 1570 (N.D. Ga. 1997) <u>aff'd sub nom.</u>; <u>Hiley v. Barrett</u>, 155 F.3d 1276 (11th Cir. 1998) (finding that a deputy sheriff who was terminated after the passage of the Lautenberg Amendment had standing to challenge the constitutionality of § 922(g) because his termination

was fairly traceable to the enactment of § 922(g)(9)); Fraternal Order of Police v. United States, 981 F. Supp. 1, 3 (D.D.C. 1997) rev'd, 152 F.3d 998 (D.C. Cir. 1998) on reh'g, 173 F.3d 898 (D.C. Cir. 1999) and aff'd, 173 F.3d 898 (D.C. Cir. 1999) (same); Gillespie v. City of Indianapolis, 13 F. Supp. 2d 811, 818 (S.D. Ind. 1998) aff'd, 185 F.3d 693 (7th Cir. 1999) (finding that a police officer's impending termination was fairly traceable to the passage of the Lautenberg Amendment and that the police officer accordingly had standing to challenge the constitutionality of the statute).

Finally, the Court notes that even if it were to find that Lieberman's injury were fairly traceable to Defendant Holder's actions, the Court would nonetheless find that Lieberman lacks standing because the Court could not find it likely that Lieberman's injury would be redressed by a favorable decision from this Court. To satisfy the third prong, Lieberman must demonstrate that it is "likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561. Here, if the Court issued a declaratory judgment in Lieberman's favor, there is nothing on the record to indicate that the MCJA would alter Lieberman's certification or the restrictions on his employment. Cf. Nat'l Ass'n of Gov't Employees, Inc. v. Barrett, 968 F. Supp. at 1570 (finding that a deputy sheriff who had been terminated had standing to challenge the constitutionality of the Lautenberg Amendment where the deputy sheriff's former employer agreed to reinstate him to his prior position if he prevailed on the merits of the suit). Indeed, it is possible that the MCJA would retain its determination that the 1995 conviction disqualified Lieberman from acting as a police officer in the state of Maine. Accordingly, it is only speculation that a favorable decision would redress Lieberman's asserted employment-related injury. Therefore, the Court finds that Lieberman lacks standing to pursue

his declaratory judgment against Defendant Holder. For this alternative reason, Lieberman's claim for declaratory judgment is DISMISSED.

## IV. CONCLUSION

For the reasons explained herein, Lieberman's Amended Complaint is DISMISSED. Defendant Eric Holder's Motion To Dismiss Or, In The Alternative, For Summary Judgment And Incorporated Memorandum Of Law (ECF No. 26) and Plaintiff's Memorandum In Opposition To Defendant Holder's Motion To Dismiss And Plaintiff's Cross Motion For Summary Judgment With Incorporated Memorandum Of Law (ECF No. 30) are MOOT. Plaintiff's Second Motion To Amend (ECF No. 48) is hereby DENIED.

SO ORDERED.

                                                  /s/ George Z. Singal
                                             United States District Judge

Dated this 21st day of August, 2013.